## In re LUCKE.

District Court, N. D. Texas, Amarillo Division.

Sept. 15, 1937.

Frank F. Taylor, Asst. U. S. Atty., of Fort Worth, Tex., for the United States.

ATWELL, District Judge.

Early in this month the court received from the Mexican Consul General, at El Paso, Texas, an application properly certified to by officers of the United States of Mexico as the basis for the extradition of Marvin Lucke, an American citizen.

The papers charged a theft. Extradition was sought under the treaty. They were forwarded to the United States Marshal at Amarillo, by the court, with an order directing the marshal to use the application as a basis for an affidavit to be made before the United States commissioner.

Upon such affidavit a warrant was issued and Lucke was brought before the commissioner. A certificate, dated September 13, 1937, was made of such hearing, and the result thereof, to this court.

The commissioner found that the articles alleged to have been stolen were of much less value than $25 and that the articles were probably not taken from Mexico but from Laredo, in the United States, at which latter point Lucke was in charge of these particular phonograph records. It appears that the property was used for radio broadcasting and was in Lucke's possession as an employee of one Baker, against whom the United States was proceeding, under some of its statutes, for an alleged violation thereof by broadcasting from the Republic of Mexico into the United States of America. That Lucke turned the records over to the United States officers for evidence and with no intention to appropriate the same, or the value thereof, to his own use and benefit. That the records are being held by such officers for that purpose, and will

be returned to Baker when the case is finished.

Section 651 of title 18, U.S.C.A., provides that "whenever there is a treaty * * * for extradition between the Government of the United States and any foreign government, any justice of the supreme court, circuit judge, district judge, or commissioner, authorized so to do by any of the courts of the United States, * * * may, upon complaint made under oath, charging any person found within the limits of any State, * * * with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty, * * * issue his warrant for the apprehension of the person so charged, * * * to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty, * * * he shall certify the same, together with a copy of all of the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty".

■ This statute is the legal authority under which this government moves to carry out its treaty with Mexico. The Congress does not authorize the giving up of the person merely because a foreign state demands. The person found here has the right to have the hearing provided for. That hearing covers at least two points: (a) The determination of the place of the commission of the alleged offense; and (b) the determination of whether the alleged offense is covered by the terms of the treaty.

■ The 1899 Treaty with Mexico, article 4 (31 Stat. 1822), provides that: "Neither of the contracting parties shall be bound to deliver up its own citizens under the stipulations of this convention, but the executive authority of each shall have the power to deliver them up, if, in its discretion, it be deemed proper to do so."

While the United States has always maintained its readiness to give up its own citizens, many of the other countries have refused to so provide; hence many of the treaties except nationals of the asylum state.

The above article of our treaty with Mexico excepts citizens of the United States, but provides that the executive authority may suffer them to be extradited if, in its discretion, it sees fit.

The procedure, therefore, is for the examining court, under the statute mentioned, to determine as to the commission of the offense and whether it comes within the treaty provisions. If it does so, then the entire matter is certified to the Secretary of State at Washingon for such action as the executive department may consider appropriate.

■ In this case the testimony which was adduced before the commissioner, and which is now presented to the court, seems to negative the commission of any act by Lucke which comes within the terms of the convention with Mexico. The property he is alleged to have stolen is of less value than $25, which is the amount that the treaty fixes as necessary, and there appears to have been no intent to convert the property to the use and benefit of the party taking, nor was the turning over of the property to the United States officers by Lucke, in Mexico. It took place in the United States. It therefore appears, from the facts developed, that no offense was committed within the Republic of Mexico, or that came within the provisions of the treaty therewith.

As somewhat helpful, see Valentine v. U. S. ex rel. Neidecker, 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5; U. S. v. Rauscher, 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425; Greene v U. S. (C.C.A.) 154 F. 401; Ex Parte McCabe (D.C.) 46 F. 363, 12 L.R.A. 589; Fourth Opinion, Attorney General, 201; Collins v. Loisel, 259 U.S. 309, 42 S.Ct. 469, 66 L.Ed. 956.

In the last case it was determined that the committing magistrate is not to determine whether the accused is guilty, but merely whether there was competent legal evidence which, according to the law of the state, would justify his apprehension and commitment for trial, if the crime had been committed in that state.

Taking that as the rule, which seems to be based upon common sense, there is lacking jurisdiction, treaty provision, and the requisite intent.

It follows that Lucke must be discharged, and it is so ordered.