In the Matter of the EXTRADITION OF Adalbert RABELBAUER, a/k/a "Bela Rabelbauer," "Christopher LaFortune," "John Barkero," a Fugitive from the Republic of Austria.

86 Cr. Misc. 1–PS–12 (JMW).
86 Civ. 2600 (JMW).

United States District Court,
S.D. New York.

July 3, 1986.

Power, Weiss & Marks, New York City, for Adalbert Rabelbauer; Jonathan Marks, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S.; Deirdre M. Daly, Asst. U.S. Atty., of counsel.

## OPINION

WALKER, District Judge.

### INTRODUCTION

Acting pursuant to a request from the Republic of Austria, the United States government has sought the extradition of Adalbert Rabelbauer. Shortly after his provisional arrest, Rabelbauer filed a petition for a writ of habeas corpus by way of an order to show cause, attacking the legal basis for his extradition. With the consent of the parties, both the writ of habeas corpus and the extradition request were considered together and given a full hearing.

The government seeks extradition of Rabelbauer to Austria on the basis of a four count March 27, 1986 Arrest Warrant which charges two distinct sets of crimes. First, he is charged in one count with inducement to abuse official authority and bribery, arising out of his allegedly successful effort to convince an Austrian prosecutor to drop charges against him. The prosecutor, Dr. Lutz Moser, has since confessed his misdeeds and provided the basis for the bribery charges against Rabelbauer. Rabelbauer challenges the government's ability to extradite him for this offense. Second, Rabelbauer is charged with three separate counts of bank fraud involving the obtaining of loans by false pretenses and submission of forged documents. He contests extradition for one of the three alleged bank frauds.

## DISCUSSION

■ The Court's function in an extradition proceeding is not to determine the guilt or innocence of the person whose extradition is sought. Rather, the court must determine whether:

(1) there is a valid extradition treaty between the United States and the Republic of Austria;

(2) Adalbert Rabelbauer is the individual sought;

(3) the offenses charged are extraditable;

(4) the requirement of "double criminality" is satisfied;

(5) there is probable cause to believe Adalbert Rabelbauer committed the offenses charged;

(6) the required documents have been presented, translated, and duly authenticated by the United States Consul; and

(7) all other treaty procedures have been followed. *Matter of Sindona,* 584 F.Supp. 1437, 1446 (E.D.N.Y.1984).

### A. *Bribery and Inducement to Abuse Authority*

■ With respect to the charges of bribery and inducement to abuse authority, Ra-

belbauer does not dispute that the requirement of double criminality is satisfied. *See* 18 U.S.C. § 201. Rabelbauer's sole argument against an order of extradition is that these crimes, as charged by Austria, are not extraditable under the Treaty of Extradition between the United States and Austria of January 11, 1930, 46 Stat. 2779, TS 822, and the Supplementary Extradition Convention between the United States and Austria of September 5, 1934, 49 Stat. 2710, TS 873 ("the Treaty").

Article II, paragraph 14, of the Treaty makes extraditable:

Embezzlement or criminal malversation committed within the jurisdiction of one or the other party by public officers or depositaries, where the amount embezzled exceeds one hundred dollars or the Austrian equivalent.

Article II also provides for extradition for "participation in any of the aforesaid crimes as an accessory before or after the fact ..." The government contends that Rabelbauer acted as an accessory to the official corruption, or criminal malversation, of the prosecutor and that this Treaty offense is equivalent to the bribery and inducement to abuse authority with which he is charged in Austria.

Rabelbauer's opposition turns on the meaning of Article II, paragraph 14. The accompanying Austrian text of the Treaty gives the word "unterschlagung" as the translation for the English "criminal malversation." Rabelbauer contends this translation limits the meaning of the English text and the government's ability to extradite him. "Unterschlagung, he maintains, means only embezzlement or misappropriation of funds and cannot be official corruption. Therefore, he concludes, malversation cannot be read to include the crimes which the prosecutor committed and he cannot be extradited as an accessory to the prosecutor's misdeeds.

At the hearing, Rabelbauer's Austrian criminal attorney, Dr. Weirgostek, testified that "unterschlagung" has a meaning much narrower than that which the govern-

ment urges, and does not include the taking of bribes. In support of his testimony, Weirgostek offered the 1975 edition of the Austrian Penal Code, which indicates that "unterschlagung" is a crime with a narrow technical meaning.

The Court, however, does not find Dr. Weirgostek's testimony credible. Rabelbauer did not establish that Weirgostek is an expert in Austrian penal law; he testified from the viewpoint of an ordinary criminal defense attorney. Most significantly, he is *Rabelbauer's* lawyer and hardly qualifies as an independent expert. Further, he admitted that the word "unterschlagung" was simply *not* found in the Penal Code prior to 1975. He was also unable to testify as to what the word might have meant when the drafters of the 1930 Treaty decided to place it alongside the English word "malversation".

■ On the other side, the government has offered the opinion of the Austrian Federal Ministry of Justice that "unterschlagung", as it was used in the Treaty, was intended to encompass the same broad range of misdeeds as the word "malversation": "In French law, this word [malversation] is applied to all grave and punishable faults committed in the exercise of a charge or commission (office), such as corruption, exaction, concussion, larceny." Black's Law Dictionary, 5th ed. (West 1979).

It is settled that "the obligations of treaties should be liberally construed so as to give effect to the apparent intentions of the parties." *Valentine v. United States ex rel Neidecker*, 299 U.S. 5, 10, 57 S.Ct. 100, 103, 81 L.Ed. 5 (1936). Moreover, the interpretations of the parties to the Treaty are entitled to great weight. *Factor v. Laubenheimer*, 290 U.S. 276, 295, 54 S.Ct. 191, 196, 78 L.Ed. 315 (1933).

A liberal construction of paragraph 14 brings official misconduct and corruption within the crime of criminal malversation. The fact that malversation's Austrian counterpart "unterschlagung" may have acquired a narrower meaning since 1930 is irrelevant. There is little doubt that the word has undergone some evolution in Austria because even Dr. Weirgostek testified that it only entered the Austrian Penal Code in 1975. The broad meaning originally attached to the word is evidenced by the fact that "unterschlagung" is also contained in the Treaty as the translation in Article II, paragraph 20 for "breach of trust." As the Austrian Federal Ministry of Justice has indicated, the word had a meaning in 1930 broad enough to be the equivalent of malversation and was used for that purpose. The intention of the contracting parties would be served by no other construction.

■ Rabelbauer also maintains that the addition of the words "where the amount embezzled exceeds ..." in paragraph 14 indicates that criminal malversation and embezzlement were intended to be synonymous and thus this paragraph was not meant to encompass official corruption. On the contrary, the presence of *both* the word "embezzlement" and the word "malversation" in paragraph 14 implies that they must have different meanings or their inclusion would be a redundancy. Thus, the clause "where the amount embezzled ..." does not necessarily limit the meaning of "criminal malversation." In fact, the presence of *only* the word "embezzled" in that clause implies that embezzlement was seen as distinct from malversation and required special qualification. When given the necessary liberal construction, paragraph 14 can be read to include the specific offense of embezzlement as well as the broader category of crimes encompassed by "criminal malversation" unfettered by any monetary limitation.

■ Accordingly, it is the conclusion of the Court that "criminal malversation," as used in paragraph 14, includes official corruption. An accessory to that corruption would be a giver of bribes. Thus, the offenses of bribery or inducement to abuse authority are within the purview of the Treaty and serve as a legitimate basis for the extradition of Rabelbauer.

■ Paragraph 20 of Article II offers an independent ground for extradition on charges of bribery and inducement to abuse official authority. The translation of that paragraph, as mentioned, also includes the word "unterschlagung." Rabelbauer may be extradited under Paragraph 20, as an accessory to a "breach of trust by ... any one in any fiduciary position." There is no doubt that a prosecutor occupies a fiduciary position and that the taking of bribes is a breach of that trust. A liberal construction of the Treaty establishes that one who induces an abuse of official authority or gives bribes is an accessory to a breach of trust and extraditable under paragraph 20.

## B. *Bank Fraud*

■ Rabelbauer is also charged with the Austrian equivalent of bank fraud and forgery involving three separate incidents and three separate banks. Since bank fraud is a crime in both the United States and Austria, *see* 18 U.S.C. § 1344 (Bank Fraud), the requirement of double criminality is satisfied. Bank fraud is also extraditable under paragraphs 11 (forgery), 18 (obtaining money by false pretenses), or 20 (fraud or breach of trust by an agent, administrator, director or officer of any corporation) of the Treaty.

■ Rabelbauer, through his company, A.C. Agrobiological Corporation ("A.C."), is charged by Austria with the misappropriation of funds from the Centro Internationale Handelsbank AG Wien ("Centro-Bank"), the Osterreichische Landerbank ("Landerbank"), and the Creditanstalt-Bankverein ("Credit-Bank"). He contests only his extradition on charges stemming from the alleged defrauding of Centro-Bank, claiming that through an Austrian remedial mechanism known as "Active Repentance" he is not chargeable with that fraud. Under Section 167 of the Austrian Penal Code, this procedure involves a "settlement" of some kind between the alleged wrongdoer and his victim which avoids criminal proceedings. Rabelbauer has produced an agreement between A.C. and Cen-tro-Bank as evidence that the dispute has been settled and may not be subject to prosecution under Austrian law.

This Court may not consider the alleged "settlement" agreement. The assertion of "Active Repentance" arising from the agreement is in the nature of an affirmative defense that must be proven, and is not ripe for consideration in this proceeding. There are numerous unresolved factual issues concerning the agreement. It is entirely unclear whether the obligations of the settlement have been met and, more fundamentally, both governments claim Centro-Bank has already repudiated the agreement. An accused may not offer evidence in the nature of a defense at an extradition hearing. *Collins v. Loisel*, 259 U.S. 309, 315–17, 42 S.Ct. 469, 471–72, 66 L.Ed. 956 (1922); *Charlton v. Kelly*, 229 U.S. 447, 461, 33 S.Ct. 945, 949, 57 L.Ed. 1274 (1913).

The doctrine of Active Repentance has no analogue in American law and the nature, scope, and affect of this affirmative defense are questions of Austrian law within the peculiar expertise of the Austrian courts. This Court's only role is to determine whether the offenses charged are extraditable and whether probable cause supports the extradition request. As a policy matter, the extraditing court should be reluctant to engage in consideration of a defense which is purely a creature of Austrian law and in no way related to treaty interpretation.

## C. *Probable Cause*

Rabelbauer does not dispute that the government has presented evidence which establishes probable cause that he committed the offenses charged. Little more discussion is needed than to state that the certified documents introduced into the record amply support a reasonable belief in Rabelbauer's guilt on the charge of inducement to abuse authority and bribery and the three charges of bank fraud. Therefore, based upon all the documents supplied by the Republic of Austria, I find there is probable cause to believe Adalbert

Rabelbauer committed the crimes of bribery and inducement to abuse official authority, as well as three separate bank frauds.

### D. *Final Requirements*

It is undisputed, and the Court so finds, that the required documents have been presented in accordance with the laws of the United States, translated, and properly authenticated by the United States Consul and that all other treaty procedures have been followed.

### CONCLUSION

Accordingly, the petition for a writ of habeas corpus is denied and the Court, pursuant to 18 U.S.C. § 3184, hereby certifies to the Secretary of State that the evidence is sufficient to sustain the charges under the Treaty. The government shall forward to the Secretary all testimony taken in this case.

IT IS HEREBY ORDERED that Adalbert Rabelbauer remain committed to the custody of the Attorney General of the United States until surrender to the appropriate Austrian authorities can be effected.

So Ordered.