Gary Norman **PERYEA**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. 2:91–CV–369.

United States District Court,
D. Vermont.

Dec. 16, 1991.

L. Randolph Amis, III, Wiener, Olenick & Amis, Burlington, Vt., for petitioner.

Thomas D. Anderson, Asst. U.S. Atty., Burlington, Vt., for respondent.

## OPINION AND ORDER

PARKER, Chief Judge.

Gary Peryea files this petition for a writ of habeas corpus to challenge his detention pursuant to the Certification of Extraditability and Order on Extradition signed by Magistrate Judge Jerome J. Niedermeier on November 20, 1991. *In the Matter of the Extradition of William Greer, et al.*, Misc. No. 91–90, 1991 WL 311924 (D.Vt.). The extradition proceedings followed a request by the government of Canada for the extradition of Peryea and nine other individuals[1] in order to try them for violations of Canadian narcotics laws. All are allegedly implicated in a foiled plan to bring approximately 50 tons of hashish into Quebec through the Gulf of St. Lawrence.

### BACKGROUND

Petitioner was arrested in Vermont on July 30, 1991 at Canada's request. He is charged by information in Canada with the offenses of conspiracy to import a narcotic into Canada, importation of a narcotic, conspiracy to traffic in a narcotic, trafficking in a narcotic, and possession of a narcotic for the purpose of trafficking, in violation of § 465 of the Criminal Code of Canada (Revised Statutes of Canada 1985, Chapt. C–46) (conspiracy counts) and §§ 4 and 5 of the Narcotics Control Act (Revised Statutes of Canada 1985, Chapt. N–1) (importation, trafficking and possession counts). All charged offenses are punishable by a term of imprisonment exceeding one year.

Canada requested petitioner's extradition pursuant to the Treaty on Extradition Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974, and entered into force on March 22, 1976 (hereafter "Treaty"). 27 U.S.T. 983, T.I.A.S. 8237. The request was filed in this court on September 10, 1991 with several appended documents, and was referred to Magistrate Judge Niedermeier, who held the extradition hearing on October 16, 1991. At the hearing the magistrate received additional evidence, including testimony from the Canadian investigating officers who introduced into evidence prior written statements of Peryea, Glenn Koski and Michael Johnson, an alleged accomplice arrested in Canada.

Judge Niedermeier conducted the extradition proceedings and issued the certification and order in this matter pursuant to 18 U.S.C. § 3184, which provides in relevant part:

Whenever there is a treaty or convention for extradition between the United States and any foreign government, ... [the magistrate] may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any

---

**1.** The other individuals are William Greer, Stephen Hutchins, Claire Cunningham, William Carr, James Mayo, Joseph Desautels, Eugene Beaudry, Glenn Koski and George Wright. George Wright remains a fugitive. The extradition requests as to all individuals were considered jointly by Judge Niedermeier and his certification and order apply to all.

such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such ... magistrate, to the end that the evidence of criminality may be heard and considered.... If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same ... to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

Finding that the Treaty was in effect at the time of the offenses charged, that those offenses are covered by the Treaty, and that the documents submitted with the extradition request and at the hearing were admissible and properly authenticated, Judge Niedermeier reviewed the evidence and determined that there was probable cause to believe that Peryea, as well as the other nine individuals charged in the Canadian informations, committed the crimes charged. He accordingly certified their extraditability and ordered the extradition to proceed.

In his application to this court for a writ of habeas corpus, petitioner raises several challenges to the proceedings to date. He contends that (1) he was improperly denied certain items of discovery; (2) evidence was admitted at the hearing in violation of the Treaty; (3) his detention exceeded permissible time limits under the Treaty; and (4) the offenses charged in Canada are not covered by the Treaty. Petitioner also seeks to adopt and incorporate the arguments made by the other extraditees in this matter who have sought to obtain release upon writs of habeas corpus. He does not, however, directly challenge the magistrate's determination of probable cause of his guilt.

Petitioner's claims are presented without argument, in no greater detail than as set forth here, and could hardly be considered without elaboration. However, as he seeks to incorporate the arguments and grounds for relief of the other extraditees, whose claims overlap Peryea's, the court will read into petitioner's claims the arguments of others and will consider them in that light.

## DISCUSSION

Petitioner was detained prior to the extradition hearing and remains incarcerated pursuant to the final clause of § 3184 as quoted above. The present petition is not an appeal of Judge Niedermeier's order; it is, rather, a challenge to the legality of petitioner's confinement. See *Spatola v. United States*, 925 F.2d 615, 617 (2d Cir. 1991) (order certifying request for extradition not "final" and therefore not reviewable on direct appeal). This court's inquiry is necessarily limited in these circumstances.

"[T]he function of the extraditing magistrate is not to decide guilt or innocence but merely to determine whether there is 'competent legal evidence which ... would justify his apprehension and commitment for trial if the crime had been committed in that state.'" *Shapiro v. Ferrandina,* 478 F.2d 894, 900–901 (2d Cir.), *cert. dismissed,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973) (quoting *Collins v. Loisel,* 259 U.S. 309, 315, 42 S.Ct. 469, 471, 66 L.Ed. 956 (1922)). In reviewing the record before the magistrate, this court's concern is limited to whether the "alleged offense fell within the terms of an extradition treaty, and whether an official with jurisdiction was presented with sufficient evidence to warrant a finding that there was a reasonable ground to believe that the [accused] was guilty." *Ahmad v. Wigen,* 910 F.2d 1063, 1064 (2d Cir.1990); see *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925). The inquiry may entail a consideration of relevant treaty provisions. See, e.g., *Spatola,* 925 F.2d at 618 (reviewing habeas petitioner's claim that his extradition was precluded by the "dual criminality" requirement of

U.S.–Italy treaty); *Ahmad,* 910 F.2d at 1066 (reviewing provisions of U.S.–Israel treaty exempting offenses "of a political character").

■ With these relatively narrow issues in mind, it is apparent that petitioner's first claim, that he was improperly denied discovery, is not cognizable in this proceeding. Access to the requested discovery items would not have aided petitioner in challenging the critical rulings of the magistrate: that the charged offenses are covered by the treaty and that there is sufficient competent evidence to conclude that petitioner committed the crimes of which he is accused in Canada. The court in any event "must abide the settled if somewhat murky principle of extradition law that an accused has no confirmed right at an extradition proceeding to present evidence that contradicts the requesting party's case." *Gill v. Imundi,* 747 F.Supp. 1028, 1040 (S.D.N.Y.1990). While the accused may offer what has been called "explanatory testimony," the law "nowhere requires a magistrate to authorize compelled disclosure of sources of such explanatory testimony." *Id.* Thus in *Gill* the extradition magistrate "acted within his discretion in declining to [compel discovery] at risk of converting the extradition hearing into a 'dress rehearsal trial.'" *Id.* (quoting *Jhirad v. Ferrandina,* 536 F.2d 478, 484 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976)).

■ Petitioner's second claim is that certain evidence was admitted contrary to the Treaty. The particular evidence is not specified in Peryea's petition; the court assumes Peryea refers to Exhibits 4 to 11 which *are* specifically charged in Joseph Desautels' Petition for a Writ of Habeas Corpus as having been admitted at the extradition hearing in violation of the Treaty. See *Desautels v. United States,* 782 F.Supp. 942 (D.Vt.). These exhibits include affidavits of three Quebec police officers, the statements of Peryea, Glenn Koski and Michael Johnson taken by the officers, and an affidavit of a U.S. Customs Special Agent. The four affiants all testified at the hearing.

The claim is that these documents were neither authenticated nor certified in the manner required by Article 10(2) of the Treaty, which states in part: "The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when, in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada...." See also 18 U.S.C. § 3190. While the disputed documents indeed were not authenticated or certified as provided in Article 10, it does not follow that they were admitted into evidence in violation of the Treaty.

Authentication and certification pursuant to Article 10 is one method of presenting documentary evidence at an extradition hearing. It is not the only method. The language of Article 10 does not limit how evidence shall be admitted; it does not, for example, provide for the admission in evidence of documents *only* when authenticated in the manner explained. The provision rather constrains the extradition judge's discretion to *exclude* documents; the Treaty mandates that documents submitted with the extradition request be admitted if they are properly authenticated, thereby permitting the requesting country to rely upon documentary evidence should it so choose. See *Shapiro v. Ferrandina,* 478 F.2d at 902. In this case, the challenged exhibits were introduced by witnesses who were competent to authenticate the documents. Judge Niedermeier properly admitted them into evidence. It may be noted that the documents submitted by the Canadian government with the extradition request all complied with Article 10.

Petitioner's third claim is that he "was held in violation of the treaty and 18 U.S.C. § 3184 because he was held beyond the time limits set forth in said treaty and therefore his detention was illegal and continues to be so." Article 11(3) of the Treaty provides that a person arrested upon application of the prosecuting country prior

to the formal presentation of the request for extradition through diplomatic channels "shall be set at liberty upon the expiration of forty-five days from the date of his arrest pursuant to such application if a request for his extradition ... shall not have been received." Petitioner was arrested pursuant to Article 11 on July 30, 1991, and the formal request for extradition was filed in this court on September 10, before the expiration of 45 days. 18 U.S.C. § 3184 contains no time limits. The claim therefore has no merit.

■ Fourth, petitioner contends that "[t]he offense charged in Canada is not included among those listed in the treaty as an extraditable offense." This argument is similarly meritless. Article 2(1) states that the Treaty applies to "any of the offenses listed in the Schedule annexed to this Treaty ... provided these offenses are punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year." The said Schedule includes, in Clause 26 (as amended by the exchange of diplomatic notes on June 28 and July 9, 1974), "[o]ffenses against the laws relating to the traffic in, production, manufacture or importation of drugs listed in Schedule I to the Single Convention on Narcotic Drugs of March 30, 1961." That document, in turn, lists "Cannabis and cannabis resin and extracts and tinctures of cannabis." 18 U.S.T. 1559, T.I.A.S. 6298. According to the analysis performed by Canadian health officials, the substance seized during the operation in which petitioner allegedly participated is cannabis resin. Exhibit J of documents submitted with extradition request.

Cannabis resin is defined as a narcotic in section 2 of the Narcotic Control Act and its annexed schedule (Revised Statutes of Canada 1985, Chapt. N–1). As set forth above, petitioner is charged in Canada with statutory offenses relating to trafficking and importing narcotics, all punishable by terms of imprisonment in excess of one year. The same conduct is of course criminal in this country, see 21 U.S.C. §§ 841, 846, 960, 963, 812 Schedule I(c)(10) (listing marijuana as a controlled substance) and 802(16) (defining marijuana as including cannabis resin), and also carries potential penalties exceeding one year in prison. Therefore, the offenses charged in the Canadian information are covered by the Treaty.

If petitioner means to suggest the offenses charged in Canada are not punishable in the United States because the word "trafficking" does not appear in the Title 21 crimes, as argued by other extraditees in this matter, this contention is plainly frivolous. 21 U.S.C. § 841(a) makes it unlawful to "distribute" a controlled substance, another way of saying "traffic" in a controlled substance. "The requirement of the Treaty is met if the particular acts charged are criminal in both jurisdictions, regardless of whether the crimes bear the same name." *Messina v. United States,* 728 F.2d 77, 79 (2d Cir.1984) (interpreting U.S.–Italy extradition treaty).

Finally, as to petitioner's incorporation of the arguments in the petitions of his co-extraditees, the court is today entering orders dismissing their petitions, having considered and rejected their asserted grounds for issuance of the writ.

### CONCLUSION

28 U.S.C. § 2243 provides for a hearing on an application for a writ of habeas corpus "unless it appears from the application that the applicant or person detained is not entitled [to the writ]." It is the view of this court that petitioner's application raises no issue that would entitle him to the writ. The petition is accordingly DENIED.

This court's stay of the magistrate's order, entered on November 25, 1991, is hereby VACATED.