In the Matter of the EXTRADITION OF Serapio DIAZ MEDINA.

No. 4:02–133–MJ [1].

United States District Court,
N.D. Texas,
Fort Worth Division.

July 8, 2002.

---

1. This case was initially filed under a Criminal Action Number, 4:02–CR–014–Y, but that action has since been closed and the case transferred to the docket of the United States Magistrate Judge as consistent with 18 U.S.C. § 3184.

David Lee Jarvis, U.S. Attorney's Office, Fort Worth, Texas, for U.S.

Claudia Montani, Federal Public Defender, Fort Worth, Texas, for defendant.

## MEMORANDUM OPINION AND ORDER

BLEIL, United States Magistrate Judge.

Pending before the United States District Court for the Northern District of Texas is the matter of the extradition of Respondent Serapio Diaz Medina from the United States to face charges of aggravated homicide in Mexico. The court has conducted a hearing and provided the Government and Medina with the opportunity to brief issues related to Medina's opposition to extradition. Having reviewed the record and legal arguments presented by the parties, the court finds that the peti-

tion for extradition should be granted for the following reasons:

## A. BACKGROUND

Medina is the subject of an arrest warrant issued by a judge in Lagos de Moreno, State of Jalisco, Mexico and stands accused of fatally shooting a relative, Jose Diaz Limon, in Jalisco on June 24, 2000. On January 23, 2002, the United States Attorney, acting on behalf of the government of the United Mexican States (Mexico), filed a Complaint for the Provisional Arrest of Medina, with a View Towards Extradition. 18 U.S.C. § 3184. *See generally* Extradition Treaty between the United States of America and the United Mexican States, May 4, 1978, art. 11, U.S.-Mex., 31 U.S.T. 5059 [hereinafter Extradition Treaty] (authorizing provisional arrest pending submission of a formal request for extradition). A provisional arrest warrant was issued on January 23, 2002, and executed on January 25, 2002. The court appointed counsel to represent Medina and ordered that Medina be detained pending an extradition hearing.

On March 22, 2002, the Embassy of Mexico submitted Diplomatic Note No. 2747 to the Secretary of State formally requesting Medina's extradition from the United States to Mexico. (Gov't Ex. 1). *See* Extradition Treaty, art. 11, 31 U.S.T. 5059 (requiring formal extradition request within sixty days of fugitive's provisional arrest). An extradition hearing was held on May 30, 2002 before the undersigned United States Magistrate Judge in accordance with 18 U.S.C. § 3184.

## B. STANDARDS FOR EXTRADITION

■ Extradition is a self-contained body of law governed by the terms of the treaty between the United States and the country requesting extradition and by the provisions found in 18 U.S.C. §§ 3181–3196. Pamela B. Stuart, *Treaty Traps How to Get Your Client Through the Maze of Ex-* *tradition,* 6–WTR Crim.Just. 24, 28 (Winter 1992). Neither the Federal Rules of Criminal Procedure or Federal Rules of Evidence (except the rules governing privilege) apply to extradition proceedings. Fed.R.Crim.Proc. 54(b)(5); Fed.R.Evid. 1101(d)(3).

■ The substantive right of a foreign country to request return of a fugitive, and the duty of the United States to deliver the fugitive, depends entirely on existence of a treaty between the nations. *In re United States,* 713 F.2d 105, 107–08 (5th Cir.1983). The obligations imposed by treaties are to be liberally construed so as to give effect to the apparent intention of the parties. *Factor v. Laubenheimer,* 290 U.S. 276, 293–94, 54 S.Ct. 191, 195–96, 78 L.Ed. 315 (1933); *Escobedo v. United States,* 623 F.2d 1098, 1104 (5th Cir.1980).

The controlling document in these proceedings is the extradition treaty between the United States of America and the United Mexican States, signed May 4, 1978 and effective January 25, 1980. A certified copy of this treaty has been submitted by the Government in support of its position. (Gov't Ex. 1). In conjunction with 18 U.S.C. § 3184, the Treaty imposes the following procedural requirements:

1. The request for extradition must be made through diplomatic channels; and

2. The request for extradition must contain a description of the offense for which extradition is requested and be accompanied by (a) a statement of facts, (b) the text of the legal provisions describing the essential elements of the offense, (c) the test of the legal provisions describing the punishment for the offense, (d) the test of the legal provisions relating to the time limit on the prosecution or execution of punishment of the offense, and (e) the

facts and personal information about the person sought to permit his identification, and if possible, information concerning his location.

Extradition Treaty, art. 10, 31 U.S.T. 5059. When the request for extradition relates to a person who has not yet been convicted, the request must also be accompanied by a certified copy of the arrest warrant issued by a judge or other judicial officer of the country requesting extradition, and by

> [e]vidence which, in accordance with the laws of the requested Party, would justify the apprehension and commitment for trial of the person sought if the offense had been committed there.

*Id.*, art. 10, para. 3, 31 U.S.T. 5059. The request for extradition is to be processed in accordance with legislation of the requested *Party.* Id., *art. 13, 31 U.S.T. 5059.*

## C. DISCUSSION

### 1. Extraditable Offense and Dual Criminality

■ Mexico seeks Medina's extradition on charges of aggravated homicide. Article 2 of the Treaty provides for extradition of any offense listed in the Appendix to the treaty and "punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year." Extradition Treaty, art. 2, para. 1, 31 U.S.T. 5059. This principle of dual criminality requires that the act on which extradition is founded be considered a crime in both jurisdictions. *Collins v. Loisel,* 259 U.S. 309, 311–12, 42 S.Ct. 469, 470, 66 L.Ed. 956 (1922); *In re Extradition of Lahoria,* 932 F.Supp. 802 (N.D.Tex.1996).

■ The Appendix to the treaty between the United States and Mexico specifies murder as an extraditable offense.

**2.** Dual criminality is generally measured by comparing the charged offense to conduct proscribed by federal law, the law of the

Extradition Treaty, app., 31 U.S.T. 5059. *See also* C.P. Jalisco arts. 213, 219 (defining aggravated homicide and providing a punishment range of twenty to thirty-five years' imprisonment). Murder is also a felony offense under both federal law and the laws of Texas and punishable by more than one year imprisonment.[2] 18 U.S.C. § 1111; Tex. Penal Code Ann. § 19.02 (Vernon 1994).

Aggravated homicide is an extraditable offense under Article 2 of the Extradition Treaty and the Appendix to the Extradition Treaty.

### 2. Identity of Fugitive

Medina's identity as the person sought by Mexico and named in the Mexican arrest warrant is not contested.

### 3. Probable Cause

Medina asserts that he has been grossly overcharged and is subject to a far greater penalty than the evidence would support.

> Extradition shall be granted only if the evidence be found sufficient, according to the laws of the requested Party, either to justify the committal for trial of the person sought if the offense of which he has been accused had been committed in that place or to prove that he is the person convicted by the courts of the requesting Party.

Extradition Treaty, art. 3, 31 U.S.T. 5059.

■ In the United States, evidence that is sufficient to sustain the charges requires a showing of probable cause. *See, e.g., Escobedo v. United States,* 623 F.2d 1098, 1102 (5th Cir.1980); *In re Extradition of Mainero,* 990 F.Supp. 1208, 1215–16 (S.D.Cal.1997); *In re Extradition of Prushinowski,* 574 F.Supp. 1439, 1448

asylum state, or the laws of a preponderance of states. *In re Extradition of Prushinowski,* 574 F.Supp. 1439, 1446 (E.D.N.C.1983).

(E.D.N.C.1983). Probable cause is the existence of reasonable grounds to believe the accused committed the offense charged, not convincing evidence of actual guilt. *See Collins v. Loisel,* 259 U.S. 309, 314–15, 42 S.Ct. 469, 471, 66 L.Ed. 956 (1922); *Escobedo,* 623 F.2d at 1102. *See also Ntakirutimana v. Reno,* 184 F.3d 419, 427 (5th Cir.1999).

Medina is charged with Aggravated Homicide, which the governing Jalisco criminal law defines in relevant part as follows:

Article 219. Bodily injuries and homicide are aggravated:

1.—When they are committed with premeditation, unfair advantage, treachery, or betrayal.

Premeditation exists when the perpetrator decides to commit a future crime, and chooses the means to do so.

Unfair advantage exists:

a).—When the offender is obviously more skillful or stronger than the victim or when the victim is unarmed.

b).—When the defendant is stronger due to the weapons he uses, to his greater skill in the handling of these weapons or due to the number of persons who accompany him.

c).—When the defendant by any means, weakens the victim's defenses.

d).—When the victim is defenseless or fallen and the offender is armed or on his feet; and

e).—When, due to any circumstances, the offender is in no danger of being killed or harmed by the victim when the offender is perpetrating the crime.

Treachery exists when someone is intentionally surprised, or abused by another.

Betrayal exists when there is breach of the trust or of the protection that had been promised either expressly or tacitly to the victim due to kinship, gratitude, friendship, employment relationship or any other circumstance that may inspire trust.

C.P. Jalisco art. 219. (Gov't Ex. 2, Tab 19).

In support of the request for Medina's extradition, the Government has submitted documentation that the Office of Attorney General for the State of Jalisco received a report on June 24, 2000 that Jose Diaz Limon had been shot and killed in the village of Las Papas. The report named Medina as the perpetrator. (Gov't Ex. 2, Tab 1). An investigation was initiated, including a review of the crime scene, an autopsy, and interviews with witnesses. (Gov't Ex. 2, Tabs 2–16). The deceased's father, Encarnacion Diaz, gave a statement that he was outside on the morning of the murder and had seen his son walking towards the bean fields. Upon hearing three or four gunshots, Diaz hurried towards the fields and found his son lying on the ground. Diaz also saw Serapio Medina running across the fields. (Gov't Ex. 2, Tab 4). Diaz stated that Serapio Medina had previously threatened to kill Limon over a land dispute and had blocked the road to deny the family access to the disputed property.

In addition, Limon's mother and wife provided statements. Limon's mother, Maria Martinez, had seen Serapio Medina and his cousin early in the morning. (Gov't Ex. 2, Tab 4). A while later, her husband came home and told her that Medina had shot their son. Martinez checked on her son, who was not breathing, and saw Medina's cousin hiding nearby. Limon's common-law wife, Reyna Vazquez Ozuna, also testified that she had seen Medina and his cousin driving a herd of cattle across her husband's property that morning. (Gov't Ex. 2, Tab 5). Limon had left the house to check on his bean fields when Ozuna heard four shots. After learning that Limon was wounded,

Ozuna ran for help. She saw Medina driving a black pick-up truck at a high rate of speed. Ozuna stated that Medina was always armed and would show the gun to Limon and Ozuna whenever they passed by. (Gov't Ex. 2, Tab 5). In addition, Ozuna stated that her husband had received several death threats from Medina because his land bordered her husband's property.

Medina's brother-in-law, Martin Campos, was found at the crime scene and detained by police, but Medina could not be located. (Gov't Ex. 2, Tabs 1, 4). Campos testified that he was driving some cattle with Medina when Medina had to stop and open a gate. Limon approached and greeted Campos, but then turned to Medina and stated he was there to make Medina "pay for the blows the police gave me because of you." (Gov't Ex. 2, Tab 11). Campos had turned his back on the men to tend to the cattle when he heard four gun shots. He saw Limon lying on the ground and Medina running away with a gun in his right hand. Campos did not see a firearm near Limon, and asserted he had been unaware that Medina was armed.

Medina's nephew Alonso Diaz was also taken into custody after he was identified as a person who drove Medina's wife and children into town after the shooting. Alonso Diaz stated that he gave them a ride because his mother had asked him to. His aunt and cousins were nervous and upset, but he did not know why and did not learn about the shooting until later that day. (Gov't Ex. 2, Tab 7).

The prosecutor for Lagos de Moreno in the State of Jalisco petitioned for issuance of an arrest warrant for Medina for the commission of an aggravated homicide. (Gov't Ex. 2, Tab 17). An arrest warrant was issued on July 4, 2000 based on findings of premeditation because Medina was carrying a weapon, had a troubled history with the victim, and walked in an area where he would meet the victim; unfair advantage because Medina knew he was not in danger of being wounded or killed by his victim; and treachery because Medina took his victim by surprise. (Gov't Ex. 2, Tab 17).

Medina complains that the Mexican authorities have suppressed evidence and that the evidence does not support the aggravated offense with which he is charged. At the extradition hearing, Medina's son, Samuel Diaz, testified to a long-running family feud, which has included threats and poisoning livestock, over the rightful ownership of some property in Jalisco. Samuel Diaz also testified about Limon's violent tendencies and suspected drug trafficking activities. (Extradition Hr'g at 9–12, 15). In addition, Medina has submitted the results of forensics tests performed in June 2000 on the right hand of Jose Diaz Limon and the left hand of Martin Campos. The tests were positive for residue indicating that both men had discharged a firearm. (Def.Ex.1). Medina complains that the Jalisco prosecutor, although he had a copy of this forensics report, did not include it in the information he submitted to obtain an arrest warrant. No ballistics tests have been provided to confirm the type of bullets removed from Limon's body or the caliber of the murder weapon. (Extradition Hr'g at 56).

Medina also presents testimony from an expert witness who disputes the existence of premeditation because Limon was on Medina's property when he was shot and because Martin Campos' statements indicate that Limon actually approached Medina. (Extradition Hr'g at 52–53). Medina's counsel also pointed out that during his initial interview Campos indicated that Limon shot at Medina, who pulled out his own gun. (Gov't Ex. 2, Tab 2; Extradition Hr'g at 54–55). Campos later provided statements contradicting his initial state-

ment, and asserted that his back was turned, that he was some distance from the other men, and that he did not see Limon with a weapon.

█ The scope of the extradition hearing is circumscribed by a distinction between explanatory and contradictory evidence. *Mainero,* 990 F.Supp. at 1216. The accused may introduce evidence explaining or negating the existence of probable cause, but evidence related solely to a defense is properly excluded. *Collins,* 259 U.S. at 316, 42 S.Ct. at 472; *Mainero,* 990 F.Supp. at 1218. *See also* Stuart, *Treaty Traps,* 6–WTR Crim.Just. at 29. Matters of defense are not appropriate or relevant because the function of the hearing judge is to determine only whether there is competent evidence to justify holding the accused for trial, not whether the evidence is sufficient to sustain a conviction. *Collins,* 259 U.S. at 316, 42 S.Ct. at 472; *Jimenez v. Aristeguieta,* 311 F.2d 547, 556 (5th Cir.1962); *Mainero,* 990 F.Supp. at 1216; *Prushinowski,* 574 F.Supp. at 1446. *See also Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925) (observing that competent evidence of reasonable grounds is not necessarily evidence competent to convict).

Other courts have likewise rejected complaints about the appropriateness of a particular charge, finding that a court does not have authority to alter prosecutorial choice during extradition proceedings, regardless of motives behind a particular selection, except to evaluate the charge for probable cause and dual criminality. *Prushinowski,* 574 F.Supp. at 1445–46. Objections in this vein are more legitimately matters of defense and not relevant to extradition proceedings. *Id.* at 1446.

Medina also contends that extradition is inappropriate because the evidence does not establish premeditation *and* unfair advantage *and* treachery, and that all three elements—being in the arrest warrant—

must be shown. In support of this proposition, Medina adduced expert testimony to this effect at the hearing and later provided an affidavit from his expert witness affirming that all of the elements set out in the arrest warrant must be established. The Court notes that, at the extradition hearing, the court and counsel for the parties proceeded on the assumption that the offense of aggravated homicide required a probable cause showing as to all three of the foregoing elements. The court's comments on the record at the conclusion of that hearing reflect as much, indicating that because the court did not find sufficient evidence to establish the elements of unfair advantage and treachery, that the court did not believe that aggravated homicide had been shown. The court did indicate at the hearing that there was clear evidence of homicide and that there was probably evidence of premeditation.

However, the Mexican government, by and through the United States Attorney, has subsequently provided Mexican Supreme Court authority that the offense of aggravated homicide may be proved in the disjunctive and that any statements in the arrest warrant that suggest a conjunctive relationship among the elements are not binding on the prosecution. (Gov't Supp. Mem.). *See also Greene v. United States,* 154 F. 401, 406 (5th Cir.1907) (noting that technical niceties will not defeat extradition or conviction). The statute on its face likewise reads in the disjunctive. *See* C.P. Jalisco art. 219. (Gov't Ex. 2, Tab 19). This is also the most logical interpretation and application of Mexican law.

█ There is probable cause to believe that the offense of aggravated homicide (with premeditation) occurred as that offense is defined under the relevant penal laws of the Mexican State of Jalisco, and there is probable cause to believe that

Medina was the perpetrator of that offense.

4. Rule of Speciality

Medina, in asserting that he has been overcharged, also contends that he cannot be extradited on a lesser included offense not alleged in the charging instrument. The Government had suggested such a possibility during previous proceedings before the court.

 It is a longstanding practice and rule of extradition that a party shall not be delivered up by the government to be tried for any other offense than that charged in the extradition ·proceedings. *United States v. Rauscher*, 119 U.S. 407, 424, 7 S.Ct. 234, 243, 30 L.Ed. 425 (1886), *cited in United States v. Alvarez–Machain*, 504 U.S. 655, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992). *See also Greene v. United States*, 154 F. 401, 404 (5th Cir.1907); *Lahoria*, 932 F.Supp. at 820; *Prushinowski*, 574 F.Supp. at 1446. Known as "the rule of speciality," the doctrine has also been incorporated into the treaty between the United States and Mexico:

> A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted.[3]

Extradition Treaty, art. 17, para. 1, 31 U.S.T. 5059. Medina thus argues there is no authority for extraditing him on a lesser or uncharged offense rather than the specific offense on which the request for extradition was based.

The Government no longer advocates extraditing Medina on a lesser offense. Moreover, probable cause exists to support the *charged* offense of aggravated homicide. The issue of extradition for a lesser included offense has become purely an academic exercise and need not be determined in the present proceedings.

5. Extradition Defenses and Other Considerations

The Extradition Treaty also provides for certain defenses to extradition, including a refusal to extradite a person for purely political or purely military offenses, or when barred by a statute of limitations, or certain capital offenses. Extradition Treaty, arts. 5–9, 31 U.S.T. 5059. Medina does not assert any of these defenses to extradition, nor does a review of the record suggest that these defenses are relevant to Medina's circumstances.

 Medina does make a number of arguments about overreaching and abuse of process by the prosecuting authorities in Mexico. The duty to certify falls upon the extraditing judge, while the ultimate decision on extradition is the prerogative of the Secretary of State. *In re United States*, 713 F.2d at 109. *Escobedo*, 623 F.2d at 1106 (power to conduct foreign affairs). Assuming a judge has found in favor of extradition, the Secretary's discretionary decision is not generally subject to judicial review. *Escobedo*, 623 F.2d at 1105–06. And humanitarian concerns, i.e., risks of death, lack of due process in requesting state, etc., are all issues for the executive branch to determine. *Escobedo*, 623 F.2d at 1107; *Mainero*, 990 F.Supp. at 1229–30; *Freedman v. United States*, 437 F.Supp. 1252, 1267 (N.D.Ga.1977).

D. CONCLUSION

Based on the foregoing, the Court enters the following findings:

1. The undersigned has subject matter jurisdiction and the authority to

---

**3.** The Treaty also provides limited exceptions to this rule. *See* Extradition Treaty, art. 17,

31 U.S.T. 5059.

hear these proceedings pursuant to 18 U.S.C. § 3184, and has personal jurisdiction over Respondent Serapio Medina.

2. A valid extradition treaty between the United States and Mexico has been in full force and effect at all times relevant to the present proceedings.

3. The requesting country has made a proper request through diplomatic channels invoking its rights under the extradition treaty.

4. Respondent Serapio Medina is the individual charged and sought by Mexican officials for the offense of aggravated homicide.

5. The charged offense of aggravated homicide is an extraditable offense under the terms of the extradition treaty between the United States and Mexico.

6. Probable cause exists to believe that an aggravated homicide occurred, and that Respondent Medina committed the offense of aggravated homicide for which he is charged and for which his extradition is sought.

7. The extradition request and exhibits from both the Government and Respondent were admitted into evidence during the hearing, and post-hearing briefs and submissions have been properly authenticated and admitted into evidence and as part of the record under the discretion of the Court.

It is ORDERED that the request by the United Mexican States for extradition of Serapio Diaz Medina is GRANTED. This ruling will be certified to the Secretary of State, together with a copy of all evidence received in this proceeding, so that a warrant may issue upon the requisition of the proper authorities of the United Mexican States for the surrender of Serapio Diaz Medina according to the stipulations of the extradition treaty. This court shall also issue a warrant for the commitment of Medina, to be held until surrender to the proper authorities can be made.

It is ORDERED that the United States Attorney shall prepare a certification consistent with this memorandum opinion and 18 U.S.C. § 3184 and submit an original and one copy of that certification to the Court within seven (7) days from the date of this opinion and order.[4]

It is further ORDERED that the Clerk of Court shall certify a copy of the transcript of the extradition hearing held May 30, 2002, to be forwarded, along with all documents filed in this matter, to the Secretary of State in the matter of the extradition of Serapio Diaz Medina.

---

4. The United States Attorney shall deliver one courtesy copy of the proposed certification order directly to the chambers of the United States Magistrate Judge.