**In the Matter of the EXTRADITION OF Feliciano Palma MATUS.**

**No. 91 Cr. Misc. p. 42 (KTD).**

United States District Court,
S.D. New York.

Feb. 10, 1992.

Otto G. Obermaier, U.S. Atty., New York City, for U.S.; Nelson W. Cunningham, Asst. U.S. Atty., of counsel.

Kaplan & Katzberg, New York City, for defendant; Robert F. Katzberg, Mayo Schreiber, Jr., of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

The Government of Chile seeks to extradite Feliciano Palma Matus ("Palma"), pursuant to the terms of an extradition treaty executed between Chile and the United States on April 17, 1900 (the "Treaty"), for crimes he allegedly committed against the

Chilean Government. The defendant is presently in the custody of the United States, having been arrested on July 31, 1991. Bail has been denied.

Palma is a 40 year old citizen of Chile and a successful manufacturer and exporter of Chilean products, principally pottery and ceramics. He has exported such goods to the United States since 1984. His company, Industrias Lozapenco, S.A. ("Lozapenco")[1], at one time employed some 3,000 persons, making it the largest private employer in the Penco region of Chile.

In 1987, a dispute arose between Palma's companies and the Chilean Internal Revenue Service over a certain tax refund that Palma, as an exporter, had applied for and received under the Chilean Value Added Tax law ("VAT"). The Chilean Internal Revenue Service initially charged Palma with tax fraud and evasion in a complaint filed on April 12, 1990 with the 12th Criminal Court in Santiago, Chile. A warrant was issued for Palma's arrest on April 16, 1990 and a search warrant was subsequently executed at his corporate offices. According to the testimony of his wife, Palma disappeared from Chile on April 18, 1990. He was later arrested in New York City on July 31, 1991, upon a warrant issued pursuant to a provisional extradition request from Chile. The formal extradition request, supported by approximately 2,000 pages of documents and records, was filed with this court on September 27, 1991.[2]

An extradition hearing was held before me on November 19, 1991 pursuant to 18 U.S.C. § 3181. The sole purpose of the hearing was to determine whether Palma is subject to extradition. There is no real dispute that Palma is the person named in the extradition warrant. No evidence was considered at the hearing, but the various documents received from the Chilean Government were made part of the record along with their translations.

I recognize that there is no direct appeal from the determination of a judicial officer in an extradition hearing. I suspect, however, that there will be a review of my determination by way of a petition for habeas corpus to another judge of this court and thereafter an appeal from the determination made by that judge. Thus, I write not for any immediate need, but rather to explain my decision to the parties and to any judicial officer who may hereafter be interested in the proceeding.

Palma makes several contentions. He asserts that the warrant issued by the Chilean government is premised on the erroneous assumption that the various offenses he allegedly committed are extraditable under the "fraud clause" of the Treaty. He next avers that the Chilean government's evidence is defective and insufficient to hold him for extradition. Finally, Palma suggests that the piecemeal manner in which the Chilean government filed the charges against him, and the way in which the United States government has handled the matter, should be considered in determining whether he should be extradited.

## DISCUSSION

■ The crimes for which extradition may be granted must be specified in the treaty between the United States and the requesting nation. *Demjanjuk v. Petrovsky,* 776 F.2d 571, 579 (6th Cir.1985). Specifically, "for a crime to be an extraditable offense it must be an offense that is either listed or defined as such by the applicable treaty." *Spatola v. United States,* 741 F.Supp. 362, 371 (E.D.N.Y.1990), *aff'd,* 925 F.2d 615 (1991). Further, according to 18 U.S.C. § 3184:

First, Palma is charged with fraudulently obtaining refunds of the VAT and with evading payment of that tax. Second, Palma is charged with fraudulently obtaining export subsidies. Third, Palma is charged with filing false documents with the Central Bank of Chile in connection with the tax refund applications. Fourth, Palma is charged with the fraudulent bankruptcy of Lozapenco.

---

1. Palma owned a number of business enterprises in addition to Lozapenco, namely: Sociedad Exportada Industrial, Ltda.; Agricola Y Forestal Penco, Ltda.; Guayacan, S.A.; and, Compania Minera Cerro Alto, Ltda.

2. The formal extradition request recites that Palma is facing four separate indictments in Chile and that the Chilean government seeks his extradition with respect to each of the charges.

[W]henever there is a treaty ... for extradition ... any magistrate ... may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government *any of the crimes provided for by such treaty* .... (Emphasis added)

In the instant case, the crimes extraditable under the Treaty include:

Fraud or breach of trust by a bailee, banker, agent, factor, trustee or other person acting in a fiduciary capacity, or director or member or officer of any company, when such act is made criminal by the laws of both countries and the amount of money or the value of the property misappropriated is not less than two hundred dollars.

This provision clearly encompasses the four charges against Palma.

█ In addition to the above limitation, extradition is only available if the acts charged are criminal in both the requesting and requested countries. *See Collins v. Loisel,* 259 U.S. 309, 311, 42 S.Ct. 469, 470, 66 L.Ed. 956 (1922). The documents supplied by the Chilean government are prima facie proof that the allegations against Palma constitute crimes in Chile. That these allegations constitute crimes in the United States is also evident. The VAT Indictment charges conduct which would violate, *inter alia,* 18 U.S.C. § 287 (false claims to government agency); 18 U.S.C. 1003 (fraudulent demand for money presented to government agency); and, 26 U.S.C. § 7207 (filing false or fraudulent tax return). The export subsidy scheme would violate, *inter alia,* 18 U.S.C. §§ 287 and 1003. Palma's submission of false documents to a government agency would be prohibited by, *inter alia,* 18 U.S.C. § 1001 (false statement to government agency) and 18 U.S.C. § 1014 (false statement to Federal Reserve Bank). Finally, bankruptcy fraud is specifically prohibited in this country by 18 U.S.C. § 152. Thus, Palma may be extradited on all four charges.

## I. *Palma's VAT Fraud Indictment*

An indictment issued by the Chilean government on April 19, 1991 charges Palma with fraudulently obtaining refunds of the VAT and with evading payment of that tax. Essentially, the VAT Fraud Indictment charges that Palma obtained the improper refunds by creating phony transactions between his various companies, reporting the transactions and applying for the export refund. At the same time, Palma was secretly cancelling out a substantial portion of the transactions without reporting the cancellations and without giving back the VAT that had already been refunded. By doing this, Palma and his companies made millions and millions of dollars.

Before addressing Palma's arguments against extradition on this charge, I must point out that the Chilean tax offense differs from tax offenses generally charged in the United States. In the U.S., most tax crimes involve evading payment of income tax, either by fraudulently claiming deductions or by refusing to pay. Chilean tax crimes, however, often involve a different kind of tax, generally referred to as a Value Added Tax ("VAT"). The VAT is somewhat like U.S. sales tax in that it is based upon the value of a physical good. Unlike the U.S. sales tax, however, the VAT is imposed at each step in production, from the processing of raw materials to the distribution of finished products.

The seller of goods in Chile must report sales and pay the applicable VAT, which is effectively added to the price paid by the buyer. Intrinsic in the concept of a "value added" tax, however, is the notion that the seller is only liable for the value that he has added to the good. Thus, the seller need only pay VAT on the value that he has added and is entitled to deduct any VAT already paid on the good. The seller calculates and reports his tax liability on a government form which is submitted monthly and lists all sales and purchases for that period. If sales exceed purchases, the seller has a fiscal debit and must pay a VAT of 16% on the excess amount. If purchases exceed sales, more VAT was paid than is owed, and the seller has a

fiscal credit which entitles him to a refund after making the appropriate application.

Given the instant facts, it is especially important to highlight how the VAT affects the exportation of Chilean goods. Chilean law encourages exportation by fully refunding all the VAT previously paid on exported goods. An exporter may file an affidavit detailing total exports and the amount of VAT previously paid on the exported goods. The affidavit must include a list of all purchase invoices, showing the amount that the exporter paid for the goods and the applicable VAT, and proof of export. The exporter is then entitled to a full refund of all VAT paid on the exported goods.

■ The first argument Palma raises against his extradition on this charge is that the Chilean tax offense does not constitute fraud under the Treaty. This contention is without merit. Fraud may be defined as:

[A] false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that [another] shall act upon it to his legal injury.

Black's Law Dictionary 788 (4th ed. 1968).

That the government is the victim of the fraud does not change the fact that it is a fraud. In any event, it is clear that the Treaty's definition of fraud encompasses fraud against a government in general, and Palma's alleged scheme in particular. Palma's scheme falls within the Treaty's fraud provision as (1) the applications for refunds which he submitted were the false factual representations; (2) according to the indictment, Palma intended to have the government rely upon those statements; and, (3) the government relied upon the statements and issued refunds of millions and millions of dollars.

Palma's additional argument that the Court of Appeals for this Circuit does not view tax violations as frauds[3] is totally

inapposite to the present situation. Similarly, the Attorney General's guidelines concerning RICO indictments has no relevance here. The tax frauds discussed in the Attorney General's guidelines involve either: (1) the evasion of taxes by making false statements concerning deductions or income, or (2) the evasion of taxes by a refusal to pay. These types of tax fraud completely differ from the instant fraudulent scheme to obtain a refund from a government treasury.

■ Palma next avers that the tax offenses he is charged with are not extraditable under the Treaty as, to be extraditable, the elements of the crimes charged would have to correspond exactly to the elements of the crimes described in the Treaty. In making this argument, Palma relies in great part on *Koskotas v. Roche*, 740 F.Supp. 904, 910 (D.Mass.1990), *aff'd*, 931 F.2d 169 (1st Cir.1991). In that case, the defendant was charged in Greece with the crime of obtaining a false certificate by fraud. Extradition was sought under the treaty between the United States and Greece which allowed for extradition for crimes which involved "obtaining property by false pretenses ... where the ... value of the property so obtained ... exceeds $200...." The magistrate who first heard the case focused on the value of the property in question and found that the charges were analogous. The district court, however, reversed holding:

The magistrate's analysis misconstrues the role of the extradition court in evaluating a charge. The question is not whether the travel documents could have a value exceeding $200. Rather, the question is whether value is an essential element of the charge. *The focus should be on whether the crime charged and the treaty offense share the same essential elements.* In other words, the extradition court must inquire whether in order to prove the charged offense the extraditing country is obliged to prove each essential element of the offense covered by the treaty.

---

**3.** · *See, e.g., U.S. v. Mangan*, 575 F.2d 32, 49 (2d Cir.), *cert. denied*, 439 U.S. 931, 99 S.Ct. 320, 58

L.Ed.2d 354 (1978); *U.S. v. Henderson*, 386 F.Supp. 1048 (S.D.N.Y.1974).

The charge of obtaining a false certificate by fraud cannot meet this test. The Greek prosecutor is not required to prove that the value of the passport exceeds $200; any evidence as to the value is apparently irrelevant to the Greek offense. Consequently, extradition on this offense would be improper. (emphasis added)

740 F.Supp. at 910.

Given the holding in *Koskotas*, Palma asserts that the VAT fraud he is charged with in Chile has different essential elements than the general fraud crime enumerated in the Treaty. It is true that the essential elements of these crimes are different. But the difference is that the crime Palma is charged with has additional essential elements, not that it lacks some of the essential elements referred to in the Treaty. That additional essential elements may be involved in the crime charged does not render it non-extraditable.

Moreover, I totally disagree with the *Koskotas* court to the extent that it held that the crime charged would only be extraditable if one of its essential elements was value in excess of $200. To my mind, the $200 minimum referred to in the Greece/United States treaty was not an element of the crime at issue. Rather, it was intended to show that extradition would not be available for minor crimes. The fallacy of the *Koskotas* court's reasoning may easily be gleaned by reversing the roles of the two countries in a hypothetical $200,000,000 securities fraud case. In this scenario, the *Koskotas* court would allow the perpetrator of the fraud to go free because our securities laws do not require proof of a minimum dollar amount for the offense to be actionable.

The Treaty's signatories could not have intended that a miscreant go scot free merely because he committed a crime which has an additional essential element than the relevant crime enumerated in the Treaty. The whole argument about essential elements tends to put form above substance and ignores the rule that the intent of the parties to an extradition treaty must control. *See Factor v. Laubenheimer*, 290

U.S. 276, 293–94, 54 S.Ct. 191, 195–96, 78 L.Ed. 315 (1933). Clearly, to heed the essential elements argument would be to defeat the purpose of peaceful extraditions.

## II. *Palma's Export Subsidy Indictment*

In an indictment issued April 19, 1991, Palma is charged with inflating the declared value of goods that his companies exported in order to obtain export subsidies. Apparently, to correct a trade imbalance, the government of Chile paid a 10% export subsidy to companies exporting from Chile. Palma's companies maintained two sets of invoices on exported goods in order to fraudulently obtain money through supposed VAT refunds. Apparently, Palma used these same documents to obtain the export subsidy. This scheme was first discovered when authorities found duplicate invoices for broomsticks priced at U.S. $8.50 while the true price was U.S. $.20 per unit. Palma had also filed claims for subsidies for ceramic washstands priced at U.S. $152 while comparable products from other exporters were listed at $20.

■ Palma seems to argue, in the alternative, that he is not guilty of this crime because: (1) the Chilean government sets the prices of exports, or (2) the subsidy is payable only when the Central Bank receives the foreign currency obtained by the export. In short answer to his assertions, this court merely assesses probable cause and, therefore, cannot entertain such defenses. *Collins v. Loisel*, 259 U.S. at 315–17, 42 S.Ct. at 471–72. Even if Palma's arguments were considered, however, they are full of holes and could not sustain judicial scrutiny.

■ Finally, Palma raises the same essential elements argument that he raised in connection with the VAT fraud. This argument, however, becomes no more persuasive when placed in the export subsidy context. The evidence shows that Palma directed the preparation of, and supplied information for, the subsidy applications. This information was materially false. Thus, the activities described in the Export Subsidy Indictment clearly constitute a

fraud practiced on the Chilean government and amount to an extraditable offense under the Treaty.

### III. *Palma's False Document Indictment*

■ The same day that the Export Subsidy Indictment was returned, the Chilean government filed a charge that Palma had submitted false export declarations to the Central Bank of Chile. It could be argued that, as charged, Palma's false declarations did not constitute a completed fraud. To my mind, however, this charge arises out of the exact same facts as the Export Subsidy Indictment.

■ Where two charges are so factually intertwined as to constitute a logical whole, both are extraditable as long as they meet the general treaty and case law requirements discussed above. *See Shapiro v. Ferrandina,* 478 F.2d 894 (2d Cir.), *cert. dismissed,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973) (citing *United States v. Paroutian,* 299 F.2d 486 (2d Cir.1962)). Therefore, because the export subsidy charge is extraditable, so is the false document charge which derives from the same set of facts. Nothing further need be said.

### IV. *Palma's Bankruptcy Fraud Indictment*

■ On April 23, 1991, the Chilean government issued an indictment charging Palma with bankruptcy fraud in that he "concealed property;" he "disposed of property to the detriment of his creditors," and, "with the intention to postpone the bankruptcy ... he employed ... ruinous means to generate funds."

■ Palma's actions concerning the VAT and export subsidy frauds would make little sense unless he had devised a scheme to take the ill-gotten gains out of his various corporations for his own personal benefit. After orchestrating just such a scheme, Palma allegedly decided to plunder his corporations when he realized that the Chilean government was close to

discovering his crimes. Given this scenario, the bankruptcy fraud indictment clearly falls within the meaning of the word "fraud"[4] as found in the Treaty. The corporations' phony books were the misstatements. The victims of the fraud were the creditors of the corporations and, perhaps, the other stockholders. Finally, the scienter was Palma's intent.

### V. *Palma's Other Arguments*

■ Palma also argues that the evidence is insufficient to hold him for extradition to Chile. I totally disagree with this argument. The hearing in an extradition proceeding is not a true "evidentiary hearing." The Federal Rules of Evidence do not apply when measuring the quantum of proof forwarded by the demanding country. Our rules of evidence are exclusionary in nature. American Courts commonly refuse to admit excellent highly probative evidence. A court sitting as an extradition tribunal, however, must recognize that evidence which is inadmissible here may be admissible in code countries like Chile. For example, hearsay is often admitted in code countries since, given proper weight, it may be very persuasive. With this in mind, I have reviewed the evidence submitted by Chile in support of its demand for extradition and I find it to be sufficient to show probable cause that Palma is guilty of the crimes charged.

■ As to Palma's taking issue with the piecemeal manner in which the Chilean government filed the indictments and the way in which the United States has handled the matter, I do not believe that either of these factors bears on this particular case. It is quite normal in a criminal investigation for the authorities to discover facts and further crimes as the investigation progresses. That Palma was first charged with one crime and then with an additional one really is of no import. Neither is the opinion of some United States government functionary who might have handled the extradition request.

---

**4.** That the term "bankruptcy fraud" is specifically mentioned in other treaties does not mean that the term "fraud," as found in this Treaty, does not encompass "bankruptcy fraud."

Under the circumstances, extradition is to be ordered. However, the extradition is not to proceed for ten days so that Palma may, if he so desires, initiate a review of his status as a prisoner held for extradition. Therefore, ten days from the date hereof, the government is to submit the appropriate order of extradition.