*Lalama Gomez v. United States*

# United States Court of Appeals
## For the Second Circuit

August Term 2024

Argued: May 12, 2025
Decided: June 9, 2025

No. 25-386

MARIO LALAMA GOMEZ,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,[*]

*Respondent-Appellee,*

MDC BROOKLYN WARDEN,

*Respondent.*

Appeal from the United States District Court
for the Eastern District of New York
No. 24-cv-7850, Carol Bagley Amon, *Judge*.

---

[*] While Lalama Gomez has not adhered to the requirement that he name his immediate custodian as the respondent, *see Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004), we conclude that the government has waived objection to his failure to comply with this rule and thus proceed to the merits of this appeal, *see Skaftouros v. United States*, 667 F.3d 144, 146 n.1 (2d Cir. 2011).

Before: LIVINGSTON, *Chief Judge*, NEWMAN, and SULLIVAN, *Circuit Judges*.

Mario Lalama Gomez appeals from a judgment of the United States District Court for the Eastern District of New York (Amon, *J.*) denying his petition for a writ of habeas corpus following the decision of a magistrate judge (Eshkenazi, *M.J.*) to certify his extradition to the Republic of Ecuador for the crime of sexual abuse. On appeal, Lalama Gomez argues that (1) sexual abuse is not an extraditable offense under the extradition treaty between the United States and Ecuador, (2) the district court should have granted habeas relief because the magistrate judge erroneously precluded Lalama Gomez from offering certain expert testimony at his certification hearing, and (3) the district court failed to consider Lalama Gomez's humanitarian arguments, including the likelihood that Lalama Gomez would be physically harmed in prison if he were to be extradited to Ecuador, especially as an accused sex offender. We disagree.

*First*, we hold that extradition is permissible when the underlying conduct constitutes an extraditable offense listed in the relevant treaty, regardless of the name given to the charge in the requesting country. Because there is probable cause to believe that Lalama Gomez engaged in conduct that constitutes the extraditable offense of rape, we agree with the district court that he may be extradited to Ecuador. *Second*, we conclude that the magistrate judge did not abuse her discretion in excluding Lalama Gomez's proposed expert testimony and that the district court did not err in denying Lalama Gomez's petition for habeas relief on these grounds. *Third*, we reaffirm our prior holdings that it is the exclusive duty of the Executive Branch – *not* the courts – to determine whether extradition should be denied based on humanitarian concerns. Accordingly, we **AFFIRM** the judgment of the district court.

AFFIRMED.

> RICHARD LEVITT (Zachary Segal, *on the brief*), Levitt & Kaizer, New York, NY, *for Petitioner-Appellant*.
>
> REBECCA URQUIOLA (Saritha Komatireddy, *on the brief*), Assistant United States Attorneys, *for* John J. Durham, United States Attorney for the Eastern

District of New York, Brooklyn, NY, *for Respondent-Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Mario Lalama Gomez appeals from a judgment of the United States District Court for the Eastern District of New York (Amon, *J.*) denying his petition for a writ of habeas corpus following the decision of a magistrate judge (Eshkenazi, *M.J.*) to certify his extradition to the Republic of Ecuador for the crime of sexual abuse. On appeal, Lalama Gomez argues that (1) sexual abuse is not an extraditable offense under the extradition treaty between the United States and Ecuador, (2) the district court should have granted habeas relief because the magistrate judge erroneously precluded Lalama Gomez from offering certain expert testimony at his certification hearing, and (3) the district court failed to consider Lalama Gomez's humanitarian arguments, including the likelihood that Lalama Gomez would be physically harmed in prison if he were to be extradited to Ecuador, especially as an accused sex offender. We disagree.

*First*, we hold that extradition is permissible when the underlying conduct constitutes an extraditable offense listed in the relevant treaty, regardless of the name given to the charge in the requesting country. Because there is probable cause to believe that Lalama Gomez engaged in conduct that constitutes the

3

extraditable offense of rape, we agree with the district court that he may be extradited to Ecuador. *Second*, we conclude that the magistrate judge did not abuse her discretion in excluding Lalama Gomez's proposed expert testimony and that the district court did not err in denying Lalama Gomez's petition for habeas relief on these grounds. *Third*, we reaffirm our prior holdings that it is the exclusive duty of the Executive Branch – *not* the courts – to determine whether extradition should be denied based on humanitarian concerns. Accordingly, we AFFIRM the judgment of the district court.

## I.  BACKGROUND

On November 14, 2017, a school in Ecuador notified local authorities after a ten-year-old student reported that her mother's former partner, Lalama Gomez, had sexually abused her. This abuse began in August 2016, approximately two months after Lalama Gomez began living with the victim's mother. On the first occasion, Lalama Gomez drove the victim to purchase ice cream, and while they were in the car together, Lalama Gomez touched her genitalia and instructed her to touch his genitalia. When the victim informed Lalama Gomez that she wanted to return home and planned to tell her mother what had transpired, Lalama Gomez directed her not to tell anyone and warned that the victim's mother would

not believe her. That same night, Lalama Gomez entered the victim's bedroom and began touching her genitalia while he masturbated. He then inserted his fingers into her vagina.

For the next year, Lalama Gomez abused the victim daily, entering her bedroom at night, touching her genitalia and breasts, and kissing her while he masturbated. Whenever the victim refused to comply, Lalama Gomez yelled at her and told her to shut up. He also threatened to kill her mother and brothers if she ever disclosed the abuse. Lalama Gomez put his fingers inside the victim's anus on two separate occasions. This abuse persisted until September 2017, when Lalama Gomez moved out of the victim's home.

On December 28, 2017, Ecuadorian authorities interviewed the victim's mother, who recounted what the victim had told her about the abuse. The mother reported that she observed changes in the victim's behavior during the period of her abuse, including bed-wetting; sleepwalking; saying, "[N]o, leave me," in the middle of her sleep; and positioning her arms in a protective posture around her body as she slept. Lalama Gomez App'x at 9. The mother also noticed that the victim's performance in school had declined and that the victim frequently reported headaches, stomachaches, and excessive sweating. Finally, the mother

5

explained to the authorities that she believed her daughter's allegations because of her own experiences with Lalama Gomez, who had coerced her into sending him nude photos and videos of herself.

On December 13, 2018, Ecuadorian authorities interviewed the victim, who repeated the same allegations that she had reported to the school and to her mother. A psychological evaluation confirmed that the victim was experiencing emotional instability and suffering from "anxiety, depression, nightmares, loss of bladder control, and suicidal ideation compatible with the indicators of sexual abuse." *Id.* at 11. Lalama Gomez was subsequently charged with violating Article 170 of the Ecuadorian Criminal Code, which makes it a crime to "force[] [an individual] to perform an act of a sexual nature on herself or another person, without there being penetration or carnal access." *Id.* at 173. In April 2018, while these charges were pending, Lalama Gomez fled to the United States and has remained a fugitive.

On September 22, 2021, Ecuador presented a formal extradition request to the United States, and on June 26, 2024, the United States Department of State submitted a declaration attesting to the authenticity of Ecuador's submissions. On July 10, 2024, a magistrate judge in the Eastern District of New York issued a

6

warrant for Lalama Gomez's arrest; Lalama Gomez was taken into custody six days later. The magistrate judge subsequently held an extradition hearing on October 8, 2024, at which the United States government submitted documentary evidence in support of extradition. During the hearing, Lalama Gomez sought to introduce expert testimony regarding the admissibility of certain evidence in the courts of Ecuador, but the magistrate judge excluded such evidence, deeming it to be outside the scope of the extradition hearing. The magistrate judge ultimately certified Lalama Gomez's extradition to Ecuador, concluding that sexual abuse is an extraditable offense under the treaty between the United States and Ecuador and that there was probable cause to believe that Lalama Gomez committed the crime of sexual abuse.

Lalama Gomez thereafter filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Eastern District of New York, challenging the magistrate judge's certification of his extradition. Lalama Gomez repeated many of the same arguments that he presented to the magistrate judge, asserting that sexual abuse is not an extraditable offense, there was not probable cause to believe that he engaged in the charged conduct, the magistrate judge erroneously precluded his proposed expert

testimony, and the district court should block his extradition on humanitarian grounds in light of the harsh treatment faced by prisoners accused of sex offenses in Ecuador. The district court rejected each of these arguments and denied Lalama Gomez's petition. Lalama Gomez timely appealed.

## II.    LEGAL STANDARDS

Extradition from the United States to a foreign country is governed by the federal extradition statute, 18 U.S.C. §§ 3181–3196, which "allocates responsibility for extradition within the U.S. Government to a judicial officer and the Secretary of State." *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000). We have made clear, however, that the judicial officer's role is "confined to [determining] the following: whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof." *Id.* Once the judicial officer determines that each of these criteria is satisfied, "he or she 'shall certify' the extraditability of the fugitive to the Secretary of State." *Id.* (quoting 18 U.S.C. § 3184). It is then for the Secretary of State to decide whether the fugitive shall be surrendered to the foreign government. *See* 18 U.S.C. § 3186; *Kapoor v. DeMarco*, 132 F.4th 595, 601 (2d Cir. 2025). And while "the Secretary of

State '*may*' order the fugitive to be delivered to the extraditing nation," the Secretary "is under no legal duty to do so." *Lo Duca v. United States*, 93 F.3d 1100, 1104 (2d Cir. 1996) (emphasis added) (quoting 18 U.S.C. § 3184).

We have previously explained that extradition orders are not final judgments appealable under 28 U.S.C. § 1291. *See Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976). Rather, a magistrate judge's finding of extraditability may only be challenged through a habeas corpus proceeding, which may then be appealed. *See Kapoor*, 132 F.4th at 601. In reviewing a habeas petition in the extradition context, a district court "may consider only (1) whether the [magistrate judge] had jurisdiction; (2) whether the offense charged is extraditable under the relevant treaty; and (3) whether the evidence presented by the [g]overnment established probable cause to extradite." *Cheung*, 213 F.3d at 88. On appeal, "we review the factual findings of the [d]istrict [c]ourt for clear error and its legal determinations *de novo*." *Sacirbey v. Guccione*, 589 F.3d 52, 63 (2d Cir. 2009). Nevertheless, "[w]e are not at liberty to second guess the determination of the magistrate judge to issue an order certifying a request for extradition." *Id.* Indeed, "[h]abeas corpus is not a writ of error, and it is not a means of rehearing what the . . . magistrate [judge] already has decided." *Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir. 1990).

9

## III. DISCUSSION

### A. Extraditable Offense

Lalama Gomez first argues that he has not been charged with an extraditable offense. He contends that the extradition treaty between the United States and Ecuador enumerates only certain offenses for which extradition may be sought and that the list of enumerated offenses includes rape and attempted rape but not sexual abuse. As Lalama Gomez emphasizes, under Ecuadorian law, the crime of rape requires "carnal access" via penetration whereas sexual abuse is defined as the nonconsensual performance of a sexual act "without there being penetration or carnal access."[1] Dist. Ct. Doc. No. 1-5 at 1, 10.

"It is a fundamental requirement for international extradition that the crime for which extradition is sought be one provided for by the treaty between the requesting and the requested nation." *Demjanjuk v. Petrovsky*, 776 F.2d 571, 579 (6th Cir. 1985), *vacated on other grounds*, 10 F.3d 338 (6th Cir. 1993). However, this inquiry becomes complicated when the treaty identifies the extraditable offenses by reference to a list of certain crimes. That is because terminology changes over

---

[1] The parties do not dispute that the crime of "rape" as used in the extradition treaty includes penetration as an element, which can be satisfied even if the defendant engages in solely digital penetration, and thus we assume without deciding that this interpretation is correct.

time, and the "definitional differences between the laws of the requested and requesting states" may make it difficult to determine whether a specific criminal charge is encompassed within the list of extraditable offenses. M. Cherif Bassiouni, *International Extradition: United States Law and Practice* 511 (6th ed. 2014). As a result, courts widely agree that "[t]here is no requirement . . . that the crime charged needs to be the mirror image of an offense listed in the [t]reaty." *In re Extradition of Pineda Lara*, No. 97-mc-1 (THK), 1998 WL 67656, at *13 (S.D.N.Y. Feb. 18, 1998). Despite this consensus, we have not yet provided guidance to district courts on *how* to determine whether a charged crime constitutes an extraditable offense, nor are we aware of any precedential decisions from our sister Circuits weighing in on this question.

In the absence of such binding authority, district courts across the country have charted two divergent paths. Some courts have held that "[e]xtradition . . . may be permissible even though the treaty does not specifically designate [the charged] crime[] in the list of extraditable offenses, as long as the *underlying conduct* constitutes an extraditable offense." *In re Extradition of Handanović*, 829 F. Supp. 2d 979, 989 (D. Or. 2011) (emphasis added). These courts examine the allegations contained within the requesting country's extradition submissions to determine

whether, based on the conduct alleged, there is probable cause to believe the fugitive committed one of the offenses listed in the treaty. *See, e.g., id.* at 989–91. That is the approach that both the magistrate judge and the district court followed in this case. Because there was probable cause to believe that Lalama Gomez digitally penetrated the victim, the magistrate judge and the district court concluded that he engaged in conduct that constitute the extraditable offense of rape.

Alternatively, other district courts have examined "whether the crime charged and the treaty offense share the same *essential elements*." *Koskotas v. Roche*, 740 F. Supp. 904, 910 (D. Mass. 1990) (emphasis added); *see also Pineda Lara*, 1998 WL 67656, at *13. Specifically, these courts "inquire whether[,] in order to prove the charged offense[,] the extraditing country is obliged to prove each essential element of the offense covered by the [t]reaty." *Koskotas*, 740 F. Supp. at 910. According to these courts, "extradition would be improper if the [t]reaty offense contained additional elements that would not be required to prove the charge." *Pineda Lara*, 1998 WL 67656, at *14. Because we assume, without deciding, that the extraditable offense of rape has an additional element – penetration – that is not required to prove the charged crime of sexual abuse under Article 170 of the

Ecuadorian Criminal Code, *see supra* note 1, the application of this elements-based approach would likely result in the conclusion that Lalama Gomez cannot be extradited to stand trial for the crime of sexual abuse.

We conclude, based on longstanding principles of treaty interpretation, that the better approach is to look at the underlying conduct rather than attempt to match the elements of the offense. Although we start from the premise that "[t]he clear import of treaty language controls," the Supreme Court has cautioned against the strict construction of a treaty's text when the "application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories." *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 180 (1982) (internal quotation marks omitted). In other words, "it is our responsibility to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties." *Air Fr. v Saks*, 470 U.S. 392, 399 (1985).

With respect to extradition treaties specifically, the Supreme Court has made clear that such agreements "should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them." *Factor v. Laubenheimer*, 290 U.S. 276, 293 (1933). Therefore, "if [an extradition]

treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred." *Id.* at 293–94; *see also* Bassiouni, *supra*, at 142 ("Where a provision is capable of two interpretations, either of which would comport with the other terms of the treaty, the judiciary will choose the construction which is more liberal and which would permit the relator's extradition, because the purpose of the treaty is to facilitate extradition between the parties to the treaty."). For this reason, most district courts that have addressed the issue have rejected the essential-elements approach, which "tends to put form above substance and ignores the rule that the intent of the parties to an extradition treaty must control." *In re Extradition of Matus*, 784 F. Supp. 1052, 1057 (S.D.N.Y. 1992). As these courts have recognized, focusing on the underlying conduct promotes the general policy in favor of extradition and thus better effectuates the intent of the parties, making it the preferred approach.

Examining the underlying conduct to determine whether an offense is extraditable also accords with the approach we have proscribed when determining whether dual criminality has been satisfied. Dual criminality is a requirement contained within many extradition treaties that "the offense for which the fugitive

is being extradited must be punishable under both [countries'] criminal law."[2] *Lo Duca*, 93 F.3d at 1111. "[I]n applying the dual criminality requirement against a foreign statute, we have *never* considered only the statutory text." *Id.* at 1111–12 (emphasis added). Instead, "we have looked towards the *conduct* of the accused to see if it falls within the proscription of [the relevant] criminal law." *Id.* at 1112; *see also Spatola v. United States*, 925 F.2d 615, 618–19 (2d Cir. 1991). Likewise, the Supreme Court has made clear that "[t]he law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries." *Collins v. Loisel*, 259 U.S. 309, 312 (1922). Rather, "[i]t is enough if the particular *act* charged is criminal in both jurisdictions." *Id.* (emphasis added). We see no persuasive reason to depart from that approach of looking to the underlying conduct rather than statutory labels or elements of the charged offense.

Lalama Gomez nevertheless argues that even if we apply the underlying-conduct approach, there is not probable cause to believe that he engaged in actions that constitute the crime of rape. Specifically, he contends that "th[e] allegation lacked legally required corroboration and therefore would not support a claim of

---

[2] We note that dual criminality is not at issue in this appeal.

penetration that is an essential element of rape." Lalama Gomez Br. at 8. We

disagree.

Ecuador's extradition submission exceeds 200 pages and includes multiple

statements by the victim and her mother as well as a psychological report, all of

which support the allegation that Lalama Gomez penetrated the victim with his

fingers. While this corroborating evidence may ultimately be insufficient to

convict Lalama Gomez, that was not the question before the magistrate judge. *See*

*Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981) ("An extradition hearing is

not the occasion for an adjudication of guilt or innocence."). Rather, the magistrate

judge was tasked with determining whether there was probable cause for

extradition, which required only that the evidence presented "support[ed] a

reasonable belief that [Lalama Gomez] was guilty of the crime[] charged." *Austin*

*v. Healey*, 5 F.3d 598, 605 (2d Cir. 1993) (internal quotation marks omitted). In

making that determination, the magistrate judge was free to consider "unsworn

statements of absent witnesses." *Collins*, 259 U.S. at 317. And a reviewing court

must remember that "[t]he credibility of witnesses and the weight to be accorded

their testimony is solely within the province of the extraditing magistrate [judge]."

*Austin*, 5 F.3d at 605 (internal quotation marks omitted). On this record, we cannot

say that the magistrate judge erred in concluding that there was probable cause to believe that Lalama Gomez penetrated the victim and thus engaged in conduct that constitutes rape.

*       *       *

To sum up, we hold, as a matter of first impression, that extradition is permissible when the underlying conduct constitutes an extraditable offense listed in the relevant treaty, regardless of the name given to the charge in the requesting country.[3] Because there is probable cause to believe that Lalama Gomez engaged in conduct that constitutes the extraditable offense of rape, we agree with the district court that he may be extradited to Ecuador.

---

[3] Although we conclude that extradition is permissible where the fugitive's underlying conduct constitutes an extraditable offense, we do not address whether extradition may be appropriate even where the underlying-conduct test is not satisfied. As previously noted, the crime charged need not be the mirror image of an offense listed in the treaty for extradition to be appropriate. In interpreting treaties, courts "may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties," *E. Airlines, Inc. v. Floyd*, 499 U.S. 530, 535 (1991) (internal quotation marks omitted), and even consider "the postratification understanding of the contracting parties," *El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 167 (1999) (internal quotation marks omitted). Because the record here demonstrates that Lalama Gomez's conduct constitutes an extraditable offense, we need not consider whether to defer to the treaty signatories' assertion that sexual abuse is sufficiently equivalent to rape to justify extradition.

**B.    Preclusion of Expert Testimony**

Lalama Gomez alternatively argues that the district court should have granted him habeas relief because the magistrate judge erroneously excluded certain expert testimony.  However, as noted above, "extradition proceedings are not to be converted into a dress rehearsal trial." *Jhirad*, 536 F.2d at 484.  Rather, the question before the magistrate judge is simply "whether the evidence marshaled in support of the complaint for extradition is sufficient" to establish probable cause. *Cheung*, 213 F.3d at 88.  Accordingly, extradition proceedings are not subject to the Federal Rules of Evidence or the Federal Rules of Criminal Procedure.  *See* Fed. R. Evid. 1101(d)(3); Fed. R. Crim. P. 1(a)(5)(A).  Likewise, "a defendant has no right to cross-examine witnesses or introduce evidence to rebut that of the prosecutor." *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984).

Indeed, because "[t]he magistrate's function is to determine whether there is any evidence sufficient to establish . . . probable cause," the fugitive's "right to introduce evidence is thus limited to testimony which explains rather than contradicts the demanding country's proof." *Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir. 1973) (internal quotation marks omitted); *see also Collins*, 559 U.S. at 316–17; *Charlton v. Kelly*, 229 U.S. 447, 461 (1913) ("To have witnesses produced to

18

contradict the testimony for the prosecution is obviously a very different thing from hearing witnesses for the purpose of explaining matters referred to by the witnesses for the government."). The "precise scope" of such explanatory evidence "is largely in the [magistrate judge's] discretion." *Shapiro*, 478 F.2d at 905 (internal quotation marks omitted); *see also Collins*, 259 U.S. at 317 ("Whether evidence offered . . . is relevant is a matter which the law leaves to [the magistrate judge's] determination, unless h[er] action is so clearly unjustified as to amount to a denial of the hearing prescribed by law."). As a result, "the mere wrongful exclusion of specific pieces of evidence, however important, does not render the detention illegal." *Collins*, 259 U.S. at 316.

Here, Lalama Gomez sought to introduce expert testimony regarding whether the victim would be permitted to testify at trial in Ecuador that the alleged sexual abuse involved penetration. For starters, we have specifically warned that extradition courts should "avoid[] unwarranted incursions into the fine details of foreign criminal procedure," *Sacirbey*, 589 F.3d at 65, and "should avoid making determinations regarding foreign law," *Skaftouros v. United States*, 667 F.3d 144, 156 (2d Cir. 2011); *see also id.* ("Any arguments regarding the demanding country's compliance with its own laws . . . are properly reserved for the courts of that

country."). In other words, the magistrate judge's task is *not* to determine what evidence will be admissible in the requesting country's courts based on that country's law. Rather, the magistrate judge's task is simply to determine whether, as a factual matter, there is probable cause to believe that the fugitive committed an extraditable offense, at which point the magistrate judge "shall certify" his extradition. 18 U.S.C. § 3184.

Moreover, Lalama Gomez's counsel explained that the purpose of the proffered expert testimony was to demonstrate that evidence of penetration would not be admissible at trial because penetration is not an element of the crime of sexual abuse. However, the magistrate judge concluded that such testimony was clearly designed "to contradict the evidence submitted by the [g]overnment – the affidavit from Amy Lindsay, an Attorney-Advisor to the United States Department of State – to support a finding that the subject crime was covered by the Treaty." *In re Extradition of Lalama Gomez*, 755 F. Supp. 3d 220, 228 (E.D.N.Y. 2024). As noted above, a fugitive is plainly not permitted to introduce testimony that seeks to contradict the evidence submitted in support of extradition. *See Shapiro*, 478 F.2d at 905; *see also, e.g.*, *In re Extradition of Manea*, No. 15-mj-157 (JGM), 2018 WL 1110252, at *10 (D. Conn. Mar. 1, 2018) (declining to consider expert

testimony on the Romanian statute of limitations because such testimony would have "contradict[ed] Romania's explanation of the law").

For the above reasons, we cannot say that the magistrate judge abused her discretion in excluding Lalama Gomez's proposed expert testimony, and thus habeas relief was not warranted on these grounds.

## C. Duty of Non-Inquiry

Finally, Lalama Gomez argues that the magistrate judge and district court erred by failing to consider that he is likely to be tortured or killed in the event he is extradited to Ecuador for a sex offense. But this argument is a nonstarter because "the degree of risk to [Lalama Gomez's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch." *Sindona v. Grant*, 619 F.2d 167, 174 (2d Cir. 1980). Indeed, we have repeatedly held that "[i]t is the function of the Secretary of State" – not the courts – "to determine whether extradition should be denied on humanitarian grounds." *Ahmad*, 910 F.2d at 1067. This interpretation comports with the plain text of the federal extradition statute, which makes clear that the magistrate judge "*shall* certify" extradition upon a finding that there is probable cause to believe the fugitive committed an extraditable offense. 18 U.S.C. § 3184 (emphasis added). And while Lalama

Gomez hangs onto our dicta in *Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir. 1960), that there may be "situations where the relator, upon extradition, would be subject to procedures or punishment so antipathetic to a federal court's sense of decency as to require reexamination of the [non-inquiry] principle," no court has ever found such an exception to the rule of non-inquiry, *see Kapoor*, 132 F.4th at 612 n.18. Accordingly, we conclude that the district court did not err in declining to consider potential humanitarian concerns in Ecuador in reviewing Lalama Gomez's habeas petition.

## IV.    CONCLUSION

For all the foregoing reasons, we **AFFIRM** the judgment of the district court. The mandate shall issue within forty-eight hours of the publication of this opinion.[4]

---

[4] *See* Fed. R. App. P. 41(b).  Upon review of all the points that Lalama Gomez raised, we are satisfied that the issues "are meritless and that the likelihood of [Lalama Gomez] prevailing in further proceedings in our [C]ourt or of his obtaining review by the Supreme Court is slim." *Ostrer v. United States*, 584 F.2d 594, 598 (2d Cir. 1978).  We may therefore direct that the mandate issue prior to the resolution of a petition for rehearing *en banc*.  *See* Fed. R. App. P. 41(b); *Ostrer*, 584 F.2d at 598–99.  Given the letter from Ecuador highlighting the looming expiration of the statute of limitations relevant to Lalama Gomez's case, we conclude that there are "good reasons shown in the record" to issue the mandate on an expedited basis here.  *Ostrer*, 584 F.2d at 599.